IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | | |
|---|---|---|
| LUCIA GONZALEZ-RODRIGUEZ, AND NAZARIA LARA-MARTINEZ, *on behalf of themselves and all other similarly situated persons* | ) ) ) ) | |
| Plaintiffs | ) | CASE NO: 5:21-cv-406 |
| v. | ) | |
| JOSE M. GRACIA, JOSE M. GRACIA HARVESTING, INC. AND GRACIA AND SONS, LLC, | ) ) ) ) | FIRST AMENDED COMPLAINT FOR DAMAGES, COSTS OF LITIGATION, AND ATTORNEYS' FEES |
| Defendants. | ) | |

PRELIMINARY STATEMENT

1. Plaintiffs Lucia Gonzalez-Rodriguez and Nazaria Lara-Martinez were recruited in Mexico to come to North Carolina to work lawfully on temporary visas for Defendants José M. Gracia and José M. Gracia Harvesting, Inc. (hereinafter, "Gracia Harvesting") in 2019 and 2020, respectively. They were promised wages of at least the required hourly wage rate for H-2A agricultural workers. When they arrived in North Carolina, after incurring expenses for their visas and travel, they were required to work in Defendants' kitchens preparing and selling food and were paid for only a fraction of the long hours they worked.

2. Defendants created a climate of fear and maintained abusive working conditions to compel Plaintiff Gonzalez-Rodriguez to continue working against her will. Defendants confiscated their employees' passports, threatened them with criminal and immigration consequences if they were to leave, and maintained working conditions that featured verbal and physical abuse, sexual harassment, unpaid wages, and food deprivation.

3. Plaintiffs bring claims against Defendants for unpaid wages, including collective action claims for minimum and overtime wages required by the Fair Labor Standards Act (FLSA), 29 U.S.C.

1

§ 201, *et seq.*, promised wages under the North Carolina Wage and Hour Act (NCWHA), N.C. Gen. Stat. § 95-26.1, *et seq.*, and anti-trafficking claims under the Trafficking Victims Protection Reauthorization Act (TVPRA), 19 U.S.C. §§ 1581, *et seq.* and the North Carolina Human Trafficking Act (NCHTA), N.C. Gen. Stat. § 14-43.18.

4. Plaintiffs seek back wages, liquidated, and punitive damages, declaratory and injunctive relief, pre- and post-judgment interest, costs of the action, attorneys' fees, and other appropriate relief to make themselves whole for damages suffered due to the Defendants' violations of law.

<u>JURISDICTION</u>

5. This Court has jurisdiction over this matter pursuant to:

    a.  28 U.S.C. § 1331 (Federal Question);

    b.  28 U.S.C. § 1337 (Interstate Commerce);

    c.  29 U.S.C. § 216(b) (FLSA);

    d.  18 U.S.C. § 1595(a) (TVPRA); and

    e.  28 U.S.C. § 1367 (Supplemental Jurisdiction).

6. This Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' FLSA and TVPRA claims that they form part of the same case or controversy under Article III, Section 2 of the U.S. Constitution.

7. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

<u>VENUE</u>

8. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c) because, at all times relevant to this Complaint, regular and substantial business activities of all Defendants occurred in Wayne, Johnston, Duplin, and surrounding counties in North Carolina, and a

substantial part of the events or omissions giving rise to the Plaintiffs' claims were committed within the jurisdiction of the Eastern District of North Carolina.

PARTIES

Named Plaintiffs

9.  Plaintiff Lucia Gonzalez-Rodriguez is a citizen of Mexico, who was admitted to the U.S. on a temporary basis with a visa pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a) (the "H-2A Program"), to perform agricultural labor for Defendants.

10. Plaintiff Nazaria Lara-Martinez is a citizen of Mexico, who was admitted to the U.S. on a temporary basis with a visa pursuant to the H-2A Program, to perform agricultural labor for Defendants.

11. At all times relevant to this Complaint, Plaintiffs were employed by Defendants within the meaning of N.C. Gen. Stat. §§ 95-25.2(3) and (4).

12. At all times relevant to this Complaint, Plaintiffs and the members of the collective action they seek to represent were employed by Defendants within the meaning of 29 U.S.C. § 203(g).

Defendants

13. Defendant Jose M. Gracia, (hereinafter "Defendant Gracia") is a farm labor contractor. He recruits and hires migrant agricultural workers and furnishes them to agricultural employers in exchange for money.

14. Defendant Gracia operated as a farm labor contractor through his business, Gracia Harvesting.

15. Defendant Gracia directed the day-to-day operations of Gracia Harvesting, including the work of Plaintiffs and the other cooks. He was physically present from time to time in the kitchens where Plaintiffs and the members of the collective action they seek to represent worked, and

3

he provided verbal and non-verbal guidance and instructions to the named Plaintiffs, their supervisors, and/or the workers the Plaintiffs seek to represent in this action.

16. At all times relevant to this Complaint, Defendant Gracia was and is an employer of H-2A workers, including the Plaintiffs and the members of the collective actions they intend to represent, as that term is defined in and by the H-2A regulations, 20 C.F.R. § 655.103(b), the FLSA, 29 U.S.C. § 203(d), and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

17. Defendant Gracia Harvesting is a corporation organized under the laws of the state of Florida in 1992. Maria V. Gracia, 48 Meadow Way, Frostproof, Fl 38843 was its registered agent for service of process.

18. Defendant Gracia Harvesting registered with the State of North Carolina as a foreign corporation in March of 2015, listing its mailing address as 200 Juniper Church Road, Four Oaks, NC, 27524. Registering with North Carolina allowed Gracia Harvesting to do business in the State.

19. At all times relevant to this Complaint, Defendant Gracia Harvesting was an enterprise "engaged in commerce or in the production of goods for commerce" within the scope and meaning of the FLSA, 29 U.S.C. § 203(s)(1)(A).

20. Upon information and belief, during each calendar year falling in the four-year period immediately preceding the date on which this action was filed, Defendant Gracia Harvesting had an annual gross volume of sales made or business done of not less than $500,000 exclusive of excise taxes at the retail level that were separately stated.

21. During each calendar year falling in the four-year time period immediately preceding the date on which this action was filed, one or more employees of Gracia Harvesting, including the Plaintiffs,

handled goods or equipment that had moved in interstate commerce within the meaning of 29 U.S.C. § 203(s)(1)(A).

22. At all times relevant to this Complaint, Gracia Harvesting was an employer of H-2A workers, including the Plaintiffs and the members of the collective actions they intend to represent, as that term is defined in and by the H-2A regulations, 20 C.F.R. § 655.103(b), the FLSA, 29 U.S.C. § 203(d) and the NCWHA, N.C. Gen. Stat. § 95-25.2(5).

23. Upon information and belief, Defendant Gracia stopped operating Defendant Gracia Harvesting in 2020.

24. Defendant Gracia now operates as a farm labor contractor through Defendant Gracia & Sons, LLC (hereinafter "Gracia & Sons).

25. Gracia & Sons was incorporated in Florida effective January 1, 2020. The president is Defendant Gracia and the agent is listed as Graciela Ream, 8960 Rhoden Loop Rd, Ft Meade, FL 33841.

26. Upon information and belief, Defendant Gracia & Sons is a mere continuation of Defendant Gracia Harvesting.

27. In 2021 and 2022, Defendant Gracia applied on behalf of Gracia & Sons for H-2A labor certification to bring H-2A workers to North Carolina.

28. At all times relevant this Complaint, Defendants were joint and individual employers of Plaintiffs and members of the collective actions within the meaning of 29 U.S.C. §§ 203(d) and (g), N.C. Gen. Stat. §§ 95-25.2(3), and 20 C.F.R. §§ 655.103(b), 655.1300(c), and 29 C.F.R. § 791.2.

## FACTUAL ALLEGATIONS

The H-2A Program

29. An agricultural employer in the United States may import foreign workers to perform labor of a temporary nature if the U.S. Department of Labor ("USDOL") certifies that (1) there are insufficient available workers within the United States to perform the job; and (2) the employment of foreign workers will not adversely affect the wages and working conditions of similarly situated U.S. workers. Foreign workers admitted under this program are commonly known as "H-2A workers."

30. The application for certification with USDOL, called a "clearance order" or "job order," must comply with applicable regulations for the recruitment of both U.S. and H-2A workers. 20 C.F.R. §§ 655.121(a)–(c). The H-2A regulations set the minimum benefits, wages, and working conditions that the employer must offer to avoid an adverse effect upon U.S. workers. 20 C.F.R. §§ 655.0(a)(2), 655.122, 655.135.

31. H-2A employers must pay H-2A workers at least the Adverse Effect Wage Rate ("AEWR"), a minimum hourly rate for work performed. The AEWR is higher than the federal minimum wage and differs by state.

32. The AEWR for North Carolina in 2019 was $12.25 per hour, effective January 9, 2019. *See* 83 FR 66306 (Dec. 26, 2018). The AEWR for North Carolina in 2020 was $12.67, effective January 2, 2020. *See* 84 FR 69774 (Dec. 19, 2019).

33. The minimum daily subsistence amount to be paid or reimbursed to H-2A workers for food during their transportation from Mexico to the U.S. was $12.46 in 2019 and $12.68 in 2020. *See* 85 Fed. Reg. 16134 (Mar. 20, 2020); 84 Fed. Reg. 10838 (Mar. 22, 2019).

6

34. An H-2A employer must offer and provide each worker three meals per day or provide the workers free and convenient cooking facilities. *See* 20 C.F.R. §655.122(g). Where the employer provides the meals, the job offer must state the charge, if any, to the worker for such meals.

35. The maximum amount an H-2A employer could charge workers for three meals per day in 2019 was $12.46. *See* Fed. Reg. 10838 (Mar. 22, 2019). The maximum amount an H-2A employer could charge workers for three meals per day in 2020 was $12.68. 85 Fed. Reg. 16134 (Mar. 20, 2020).

Defendants' H-2A Program History

36. Defendant Gracia has participated in the H-2A program as an H-2A Labor Contractor in North Carolina since 2015, either through Defendant Gracia Harvesting or Defendant Gracia & Sons. Defendants do not have their own fixed-site agricultural operation or their own need for H-2A labor. Rather, as H-2A Labor Contractors, Defendants' business is to furnish H-2A labor to various farms that they contract with.

37. Defendant Gracia has contracted with Andrew Jackson Law, in Clinton, North Carolina, since 2015 as his agent to prepare and file the North Carolina H-2A applications with the required federal and state agencies and Jackson filed all the H-2A applications relevant to this lawsuit.

38. In June of 2018, Defendants Gracia and Gracia Harvesting received the results of an investigation of Defendant Gracia Harvesting's Delaware operations by the USDOL Wage and Hour Division ("WHD").

39. The WHD investigation found that, in 2016 Defendant Gracia Harvesting failed to:

    a. Comply with H-2A recruitment requirements requiring that the job order specify the types of work the employees will be performing. The job order listed only farmworker

and laborer positions, but Defendant Gracia Harvesting employed workers in supervisor, cook, and bus driver positions;

b. Provide kitchen facilities or reasonably priced meals to the workers as required. Instead, the contractor required workers to purchase their meals and the average daily cost of meals exceeded the maximum amount allowed;

c. Pay the wage rate as offered;

d. Keep accurate records of employees' hours and earnings; and

e. Provide or secure housing for workers as required.

40. In 2019, Defendant Gracia submitted and received approval to bring in a total of 624 H-2A workers to perform work in North Carolina as "Farmworkers and Laborers, Crops," in addition to applications approved for H-2A labor in Georgia, South Carolina, Delaware, and Florida.

41. In the application under which Defendants Gracia and Gracia Harvesting employed Plaintiff Gonzalez-Rodriguez, Job Order 11112187, ("the 2019 Order"), Defendants requested and were approved to hire 111 temporary foreign workers to cultivate and harvest sweet potatoes, melons, and cucumbers on other entities' farming operations during the 2019 North Carolina agricultural season from September 1 until November 29, 2019. Defendants did not request and USDOL did not approve Defendants to employ H-2A workers as cooks under this order.

42. In 2020, Defendant Gracia submitted and received approval to bring in a total of 546 H-2A workers to work on other entities' farming operations in North Carolina, in addition to applications approved to bring H-2A workers to Georgia, South Carolina, Florida and Delaware.

43. In the application under which Defendants Gracia and Gracia Harvesting employed Plaintiff Lara-Martinez, Job Order H-300-20069-388905 ("the 2020 Order"), Defendant Gracia

requested and were approved to hire 367 temporary foreign workers to work in watermelon, bell pepper, tobacco, sweet potatoes, and squash, and eggplant on other entities' farming operations from May 9, 2020 until November 23, 2020. Defendants did not request and USDOL did not approve Defendants to employ H-2A workers as cooks under this order.

44. In the 2019 and 2020 Applications, Defendant Gracia on behalf of Defendant Gracia Harvesting certified its compliance with the assurances contained in 20 C.F.R. §§ 655.121, 655.122, and 655.135 including assurances that Defendants would:

    a. Pay all employees at least the highest of the Adverse Effect Wage Rate ("AEWR"), the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage for every hour or portion thereof worked during a pay period, 20 C.F.R. §§ 653.501, 655.120(a), 655.122(l);

    b. Offer and provide each worker three meals per day at a cost no greater than the maximum daily charge set by the Department of Labor or provide the workers free and convenient cooking facilities, 20 C.F.R. § 655.122(g);

    c. Comply with all applicable Federal, State and local laws and regulations, including, but not limited to, the FLSA, Title VII of the Civil Rights Act, and the TVPRA, 20 C.F.R. § 655.135(e); and

    d. Maintain accurate and adequate records with respect to Plaintiffs' earnings, records reflecting the nature and amount of work performed, the hours Plaintiff worked each day, the rate of pay, and the amount of and reasons for any and all deductions taken from Plaintiffs' wages. 20 C.F.R. § 655.122(j).

45. Defendant Gracia signed the assurances contained in the 2019 and 2020 H-2A Applications on behalf of Defendant Gracia Harvesting, under penalty of perjury.

46. In the 2019 Clearance Orders, as the owner of Defendant Gracia Harvesting, Defendant Gracia certified that all workers employed pursuant to that order would be paid the highest of the adverse effect wage rate, ($12.25 per hour) or the prevailing piece rate for all hours worked each workweek. He also certified that the job order contained all the material terms and conditions of the job, and that "[e]mployer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals."

47. In the 2020 Clearance Orders, as the owner of Defendant Gracia Harvesting, Defendant Gracia certified that all workers employed pursuant to that order would be paid the higher of the adverse effect wage rate ($12.67 per hour) or the prevailing piece rate for all hours worked each workweek. He also certified that the job order contained all the material terms and conditions of the job, and that "[e]ployer will furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals."

48. By signing the 2019 Order, Defendants knowingly included false and deceptive terms with intent to defraud. The false and deceptive terms included, but were not limited to, specifications that:

   a. Workers would harvest sweet potatoes, peppers, and melons, and workers would only engage in work incidental to the agricultural operation;

   b. Defendants would pay workers in accordance with the 2019 Order;

   c. Defendants would "furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals" and "transportation to assure workers access to store where they can purchase groceries;"

   d. Defendants would pay $12.25 for each hour worked by workers employed pursuant to the Order;

10

e.  Defendants would abide by all federal and local employment laws; and

f.  the 2019 Order described the actual promised terms and conditions of the employment being offered and all the material terms and conditions of the job.

49. By signing the 2020 Order, Defendants knowingly included false and deceptive terms with intent to defraud. The false and deceptive terms included, but were not limited to, specifications that:

a.  Workers would be harvesting sweet potatoes, peppers, and melons;

b.  Defendants would pay workers in accordance with the 2020 Order;

c.  Defendants would "furnish free and convenient cooking and kitchen facilities so workers may prepare their own meals" and "transportation to assure workers access to store where they can purchase groceries;"

d.  Defendants would pay $12.67 for each hour worked by workers employed pursuant to the Order;

e.  Defendants would abide by all federal and local employment laws; and

f.  The 2020 Order described the actual promised terms and conditions of the employment being offered and all the material terms and conditions of the job.

Defendants Bring Plaintiffs to NC to Work on H-2A Visas

50. Defendants, by and through their agent Felipe Bautista ("Bautista") in Mexico, recruited Plaintiff Gonzalez-Rodriguez and others to work for them in North Carolina during the 2019 agricultural season on H-2A visas.

51. Defendants' agent Bautista told Plaintiff Gonzalez-Rodriguez that she would work harvesting sweet potatoes and blueberries and be paid $12.25 per hour. He also promised she would receive a visa extension of up to a year.

11

52. Relying on Defendants' promises to her, Plaintiff Gonzalez-Rodriguez obtained loans in her hometown to pay for the costs associated with obtaining her visa and traveling to North Carolina.

53. Defendants' agent Bautista met with Plaintiff Gonzalez-Rodriguez to collect information for her visa application, including her home addresses in Mexico and her passport information.

54. Bautista and another Gracia agent required Plaintiff Gonzalez-Rodriguez to pay them about 19,000 Mexican pesos prior to obtaining her visa.

55. Defendants' agents instructed workers, including Plaintiff Gonzalez-Rodriguez, how to apply for and get an H-2A visa, when to depart from their hometowns to travel to Monterrey, Mexico, to obtain the visa, where to stay, when to report to the U.S. Consulate for the visa interview, how to conduct themselves in the interview, and when and how to depart for the job in North Carolina.

56. At the direction of the Defendants' agents in Mexico, Plaintiff Gonzalez-Rodriguez traveled at her own expense from her village in the southern Mexican state of Oaxaca to the U.S. Consulate in Monterrey, in northern Mexico, where she waited for her visa to be issued.

57. Plaintiff Gonzalez-Rodriguez paid for the costs of her lodging for approximately two nights in the hotel in Monterrey near the Consulate designated by the Defendants.

58. Plaintiff Gonzalez-Rodriguez traveled with four to five busloads of Gracia employees from Monterrey, Mexico, to the border in buses arranged by Defendants.

59. Defendants then transported Plaintiff Gonzalez-Rodriguez and her similarly situated co-workers from the border to North Carolina. Plaintiff and her co-workers paid the costs of their meals during their travel.

60. In order to come to the United States to work for Defendants under the H-2A program, Plaintiff Gonzalez-Rodriguez was required to pay a fee to the recruiter, travel to the U.S. Consulate in Monterrey at her own expense, pay for lodging in Monterrey, pay for the H-2A visa and related expenses, and pay for meals throughout her trip from home to North Carolina. Upon information and belief, Plaintiff's similarly situated coworkers had to pay the same costs.

61. Because of the expenses that Plaintiff Gonzalez-Rodriguez was required to pay in order to come to work for Defendants in North Carolina, she arrived having spent nearly the entire proceeds of her loans and was in immediate need of earnings.

62. Defendants did not reimburse Plaintiff Gonzalez-Rodriguez and the other camp cooks for the expenses described in paragraph 60 in their first workweek. Because of this failure to reimburse, Plaintiff's earnings in that first workweek were below the minimum wage and below the promised AEWR. Upon information and belief, the earnings of her similarly situated co-workers were also below the minimum wage and below the promised AEWR in their first workweeks.

63. Plaintiff Gonzalez-Rodriguez did eventually receive a reimbursement check from Defendants, but it was not enough to fully reimburse her.

64. Plaintiff Gonzalez-Rodriguez arrived in North Carolina on or around October 4, 2019.

65. Defendants transported Plaintiff Gonzalez-Rodriguez to a labor camp located at 200, 210, and 220 Juniper Church Rd. Four Oaks, Johnston County, NC 27524 (hereinafter the "Four Oaks Labor Camp").

66. Defendant Gracia owned the Four Oaks Labor Camp at all relevant times and owned and lived in a house located at the labor camp.

13

67. The Four Oaks Labor Camp is in a rural area, accessible only by a dirt road running past and behind Defendant Gracia's house.

68. At the Four Oaks Labor Camp, Defendant Gracia confiscated the passports, Mexican identification documents, and I-94 immigration documents of the arriving workers, including Plaintiff Gonzalez-Rodriguez. Defendant Gracia retained these documents for about two weeks before returning them.

69. Defendants recruited Plaintiff Lara-Martinez to work in their labor camp kitchens on an H-2A visa during the 2020 agricultural season.

70. At the direction of the Defendants' agents in Mexico, Plaintiff Lara-Martinez traveled at her own expense from her village to the U.S. Consulate in Monterrey, in northern Mexico, where she met with agents of Defendant to get her visa.

71. Plaintiff Lara-Martinez paid for the costs of her lodging for approximately three nights in the hotel in Monterrey near the Consulate designated by the Defendants.

72. Plaintiff Lara-Martinez then traveled with other Gracia employees from Monterrey, Mexico, to the border in a bus arranged by Defendants, where Plaintiff and the others paid a fee to cross the U.S. border.

73. In order to come to the United States to work for Defendants under the H-2A program, Plaintiff Lara-Martinez was required to travel to the U.S. Consulate in Monterrey at her own expense, pay for lodging in Monterey, pay for the H-2A visa and related expenses, pay the border crossing fee and pay for food throughout her trip from home to North Carolina. Upon information and belief, Plaintiff's similarly-situated co-workers also had to pay those same costs.

14

74. Defendants did not reimburse Plaintiff Lara-Martinez and the other camp cooks for the expenses described in paragraph 73 in their first workweek. Because of this failure to reimburse, Plaintiff's earnings in that first workweek were below the minimum wage and below the promised AEWR. Upon information and belief, the earnings of her similarly situated co-workers were also below the minimum wage and below the promised AEWR in their first workweeks.

75. At some point after the first workweek, Plaintiff Lara-Martinez and her similarly situated co-workers received a partial reimbursement from Defendant Gracia for some of their expenses.

76. The expenses described in ¶¶ 60 and 73 were an incident of and necessary to Defendants' employment of the named Plaintiffs and each of their similarly-situated coworkers and were incurred primarily for the benefit or convenience of Defendants, within the meaning of 29 C.F.R. §§ 531.32(c) and 778.217.

77. Plaintiff Lara-Martinez arrived at the Four Oaks Labor Camp on approximately June 12, 2020.

78. Upon her arrival in North Carolina, Defendant Gracia confiscated Plaintiff Lara-Martinez's passport, Mexican identification card, and her I-94 immigration form. Defendant Gracia did not return these documents for about two weeks.

79. Defendants have engaged in a pattern and practice of confiscating workers' passports, immigration documents, or other identity documents since 2016, in violation of the TVPRA. Defendants had knowledge that Defendants' practice of confiscating or withholding workers' documents in the year was in violation of federal law, specifically of the TVPRA.

Plaintiffs' Work and Compensation

80. Defendants only assigned female workers to work in the kitchens in 2019 and 2020.

81. Immediately after Plaintiff Gonzalez-Rodriguez arrived in North Carolina, a Gracia Harvesting supervisor told Plaintiff Gonzalez-Rodriguez that she would be working in the kitchen instead of in the fields.

82. Plaintiff Gonzalez-Rodriguez worked for two days in the Four Oaks kitchen with four other cooks and two Gracia supervisors, Maria Camarillo ("Camarillo") and Veronica Covarrubias ("Covarrubias") (together, "the Gracia supervisors"). The Gracia supervisors and the Gracia cooks slept in rooms next to the kitchen where they worked.

83. On her third day in North Carolina, Defendants transported Gracia supervisor Camarillo, Plaintiff Gonzalez-Rodriguez, and another cook to another labor camp located at 2617 Dobbersville Road, Mount Olive, NC ("Monks Labor Camp"). Camarillo informed Plaintiff Gonzalez-Rodriguez and another cook, Yesica Velasco-Lopez, that they would work at both the Monks Labor Camp kitchen, the Four Oaks Labor Camp kitchens, and another location where Gracia employees were living. Plaintiff Gonzalez-Rodriguez was assigned to live at the Monks labor camp.

84. Neither the Four Oaks Labor Camp nor the Monks Labor Camp are located on farms.

85. During Plaintiff Gonzalez-Rodriguez's first week of work, she performed tasks that included, but were not limited to: preparing food, packing lunches, accompanying a Gracia driver to deliver lunches to the Gracia field workers, assisting the Four Oaks Labor Camp cooks, preparing dinner for Gracia field workers to eat after they returned from the fields, and cleaning.

86. Defendants then added new job duties, requiring Plaintiff Gonzalez-Rodriguez to also prepare breakfast and coffee and to sell breakfast items to the workers.

87. Beginning with her second workweek, Plaintiff Gonzalez-Rodriguez worked around 110 hours per week. She typically started working at 4 a.m. because she had to prepare coffee and breakfast before the workers left for the day, and did not finish work until after 10 p.m.

88. Plaintiff Gonzalez-Rodriguez was typically paid around $400 per week by Defendants, including for the weeks in which payroll was issued on October 20, 2019 and October 27, 2019.

89. The labor camp kitchens were not open when Plaintiff Lara-Martinez arrived to work for Defendants in 2020, so she was assigned to work in a packinghouse and in the field.

90. The packinghouse where Plaintiff Lara-Martinez worked was part of an agricultural operation called DL&B Enterprises, Inc.

91. On or around August 1, 2020, Defendant Gracia told Plaintiff Lara-Martinez through her husband that she would be moved to the Four Oaks Labor Camp to work as a cook for Defendants.

92. Covarrubias was a supervisor of the Four Oaks kitchens in 2020.

93. Plaintiff Lara-Martinez worked in the kitchens from approximately 5 or 6 am until 11 pm or later every day, Monday through Saturday. On Sundays, she worked several hours preparing and cleaning up from the mid-day meal.

94. Plaintiff Lara-Martinez's work included preparing and serving or packing meals, cleaning dishes and the kitchen after each meal, and maintaining the kitchen.

95. Gracia kitchen supervisor, Covarrubias, did not allow the cooks to take breaks to eat and drink and the Gracia cooks were often hungry.

96. In total, Plaintiff Lara-Martinez worked as a Gracia cook approximately 106-107 hours per week, but Defendants paid her only about $550 per week.

97. The pay records Defendants furnished Plaintiffs each week show that Defendants grossly understated the number of hours they actually worked.

98. Defendants did not pay Plaintiffs the required minimum wage or the AEWR for all hours worked. Upon information and belief, Defendants failed to compensate Plaintiffs' similarly situated co-workers at either the minimum wage or promised AEWR for all of the hours worked in one or more workweeks as well.

99. Although both Plaintiffs regularly worked more than forty hours per week, Defendants never paid them one and a half times their regular rate of pay for hours worked over forty. Upon information and belief, Defendants did not compensate Plaintiffs' similarly situated co-workers at the required overtime wage rate for all hours over forty in workweeks in which they performed work preparing and selling food either.

100. Defendants gave the Plaintiffs and other Gracia cooks' paychecks to Covarrubias, and Covarrubias cashed the checks for the cooks and paid them in cash with the accompanying paystubs.

101. On at least two occasions, the Gracia supervisors did not give Plaintiff Gonzalez-Rodriguez the full value of her paycheck after cashing it for her.

102. The named Plaintiffs and their similarly situated coworkers whom they seek to represent had an express, constructive, or implied agreement that Defendants would pay them wages at the rate required by any applicable federal and/or state law when those wages were due for each hour or part of an hour that the named Plaintiffs and proposed class members performed compensable work under the FLSA and/or the NCWHA for Defendants.

103.    Although the 2019 and 2020 Clearance Order stated that all workers would have access to the kitchens to prepare their meals and opportunities to purchase groceries, Defendants did not permit field workers to enter or use the labor camp kitchens.

104.    Defendants sold the food that Plaintiffs prepared to Defendants' fieldworker employees. In 2019, Defendant Gracia charged approximately $7 per meal and sold breakfast to workers through the Plaintiffs and other cooks, generally charging $2 per breakfast item. In 2020, Defendant Gracia charged approximately $14 for lunch and dinner.

105.    The Gracia cooks, including Plaintiff Gonzalez-Rodriguez, were required to give the money they received from selling breakfast to Defendant Gracia or a Gracia supervisor.

106.    At times, people who were not Gracia employees purchased food from the Gracia cooks in the fields.

107.    The Gracia cooks, including Plaintiffs, were required to collect and deliver any money they received from selling food to non-Gracia employees to Camarillo or other Gracia supervisors, who gave it to Defendant Gracia.

108.    On some occasions, workers purchased soft drinks from Covarrubias. These purchases, upon information and belief, were sold at a profit to the Defendants.

109.    Upon information and belief, non-Gracia employees also purchased refreshments from the Gracia cooks.

Threatening Working Conditions

110.    The Gracia supervisors subjected Plaintiff Gonzalez-Rodriguez and the other Gracia cooks she worked with to verbal abuse and yelling, calling them names which translate to "stupid" and "animal." The Gracia supervisors yelled at them to hurry or for making mistakes.

19

111.    On Plaintiff Gonzalez-Rodriguez's first day, she observed the Gracia supervisors yelling and gesturing aggressively at another cook, Yesica Velasco-Lopez, until Ms. Velasco-Lopez cried.

112.    Shortly after that, the Gracia supervisors and a Gracia driver brought the Gracia cooks to a laundromat where Ms. Velasco-Lopez managed to escape with help from a local resident when the Gracia supervisors briefly left the Gracia kitchen workers alone.

113.    After Ms. Velasco-Lopez escaped, Camarillo and Covarrubias took the Gracia cooks, including Plaintiff Gonzalez-Rodriguez, to the vehicle where they harshly interrogated them, asking where Ms. Velasco-Lopez went. Covarrubias yelled so loudly that Plaintiff Gonzalez-Rodriguez feared she might become physically violent.

114.    The Gracia supervisors told Plaintiff Gonzalez-Rodriguez and the other cooks that they had to promise not to leave. Covarrubias did not stop yelling until Plaintiff Gonzalez-Rodriguez affirmatively told her she wouldn't leave.

115.    After Ms. Velasco-Lopez escaped, the Gracia supervisors forbade the Gracia cooks from leaving the camp without supervision and required them to wash their laundry by hand in outdoor tubs at the labor camps, instead of allowing them to leave the labor camp to go to a laundromat. The Gracia supervisors also forbade them from to staying at the camp alone without supervision.

116.    The Gracia supervisors did not allow the Gracia cooks to take reasonable breaks or provide them enough time to eat and drink, and berated, yelled at, and insulted them if they did not work to their satisfaction.

117.   Plaintiff Gonzalez-Rodriguez often felt weak due to dehydration and malnourishment. At one point, Plaintiff-Gonzalez-Rodriguez became ill and noticed rashes and blotches on her skin.

118.   When Plaintiff Gonzalez-Rodriguez reported to Camarillo that she felt too ill to continue working and showed her the blotches on her skin, Camarillo did not allow her to stop working or to seek medical care.

119.   Upon information and belief, Defendants failed to report Plaintiff Gonzalez-Rodriguez's illness to the local health department in violation of 15A N.C Admin. Code 18A.2114(4)(B)(2008).

120.   Plaintiff Gonzalez-Rodriguez feared the Gracia supervisors because of their threatening and abusive behavior.

121.   Plaintiff Gonzalez-Rodriguez felt compelled to continue providing labor for Defendant Gracia Harvesting.

122.   Gracia supervisor Camarillo physically abused Plaintiff Gonzalez-Rodriguez on multiple occasions.  On one occasion, Camarillo threw a water bottle at Plaintiff Gonzalez-Rodriguez to urge her to work more quickly.

123.   Camarillo also prodded Plaintiff Gonzalez-Rodriguez with hot objects, once holding a lighter to Plaintiff Gonzalez-Rodriguez's chest, and, on another instance, a hot tray to her head.

124.   On another occasion, Camarillo shoved Plaintiff Gonzalez-Rodriguez against the gas stove while it was burning. The flame singed Plaintiff Gonzalez-Rodriguez's shirt and burned her arm.

125.   When Plaintiff Gonzalez-Rodriguez was bent over the stove while working one day, Camarillo reached over to the burner switch and turned it to the highest setting. Plaintiff

Gonzalez-Rodriguez had to jump backwards to avoid the flame. Her hair and eyelashes were burned.

126. One night, after Plaintiff Gonzalez-Rodriguez finished working, a Gracia employee entered the Plaintiff's room, prevented her from leaving, and forcibly raped her.

127. Upon information and belief, Camarillo heard Plaintiff Gonzalez-Rodriguez crying and protesting from her room next door but did nothing to help.

128. On several occasions before and after the rape, Plaintiff Gonzalez-Rodriguez observed Camarillo and her attacker talking and laughing with each other. Camarillo's friendly relationship with him caused Plaintiff Gonzalez-Rodriguez to believe Camarillo would side with him if she reported the assault.

129. Plaintiff Gonzalez-Rodriguez did not know what to do after the assault because she was isolated at a remote labor camp, she was intimidated by Defendants, and was unfamiliar with the U.S. legal system.

130. The Gracia supervisors rarely permitted Plaintiff Gonzalez-Rodriguez to leave the labor camp grounds, and, even when they did, they required her to be accompanied by one of the Gracia supervisors or a Gracia driver.

131. The Gracia supervisors told Plaintiff Gonzalez-Rodriguez that, if she left, the police would arrest her for "breaking her contract" (translated from Spanish).

132. The Gracia supervisors told Plaintiff Gonzalez-Rodriguez that police or immigration officials would arrest her if she got on a bus in an effort to leave her employment with Defendants.

133. When another Gracia cook expressed unhappiness and discomfort, the Gracia supervisors told the Gracia cooks that Defendant Gracia could report them to the police and that Defendant Gracia had many contacts in Mexico and in U.S. immigration enforcement.

134. Plaintiff Gonzalez-Rodriguez understood this to mean that Defendant Gracia would and could retaliate with arrest, deportation, or extrajudicial force if she reported the wage theft or if she left her employment with Defendants prior to completing her contract.

135. Camarillo told Plaintiff Gonzalez-Rodriguez that leaving or complaining would be a betrayal to Defendant Gracia and that Defendant Gracia could then report her to law enforcement.

136. The Gracia supervisors' threats led Plaintiff Gonzalez-Rodriguez to believe it was a crime for her to stop working for Defendants before the end of her contract and therefore to believe she could go to jail for leaving.

137. The Gracia supervisors spoke of Defendant Gracia as a very powerful person, and Plaintiff Gonzalez-Rodriguez feared her family in Mexico might be harmed because Camarillo and Felipe Bautista were from Plaintiff Gonzalez-Rodriguez's hometown.

138. Plaintiff Gonzalez-Rodriguez tried to work harder after hearing these threats because she feared the consequences of displeasing Defendant Gracia or his supervisors.

139. Plaintiff Gonzalez-Rodriguez knew that the Gracia supervisors had worked with Defendant Gracia for several years and observed him inviting them to dinner on several occasions.

140. The words, actions, and behavior of the Defendants, their agents, and their supervisors caused Plaintiff Gonzalez-Rodriguez to believe that she might experience financial harm, arrest, deportation, physical harm to herself or her family, or other forms of retaliation if she did not continue providing labor for the Defendants.

141.    On October 31, 2019, an outreach team from Legal Aid of North Carolina Farmworker Unit visited the Monks Labor Camp and dropped off community education materials.

142.    After the outreach team left, Camarillo threw the materials in the trash. She yelled at Plaintiff Gonzalez Rodriguez and told her not to escape or try to go home. Camarillo said that if Plaintiff Gonzalez-Rodriguez tried to escape, Camarillo would report her to Defendant Gracia. Camarillo threatened her that Defendant Gracia would call the police to have them "pick up" Plaintiff Gonzalez-Rodriguez (translated from Spanish) if she tried to leave.

143.    Shortly after Legal Aid's visit, Plaintiff Gonzalez-Rodriguez contacted Ms. Velasco-Lopez one night to ask her for help in escaping, and Ms. Velasco-Lopez provided her with the contact information of the local resident who had helped Ms. Velasco-Lopez escape.

144.    Around 3 am on or about November 20, 2019, after Camarillo went to bed, Plaintiff Gonzalez-Rodriguez packed her suitcase and left, running through the rain, down the dirt road out of the labor camp, to the main road.

145.    Plaintiff Gonzalez-Rodriguez called Ms. Velasco-Lopez's contact for help and hid, waiting under a tree, until the local resident arrived to pick her up later in the morning.

146.    After leaving the labor camp, Plaintiff Gonzalez-Rodriguez feared retaliation from Defendants in North Carolina or in Mexico.

147.    Plaintiff Gonzalez-Rodriguez instructed her relatives in Mexico to move her children to another city to protect them. She was concerned that agents or contacts of Defendant Gracia would find and harm her family.

148.    In 2020 when Plaintiff Lara-Martinez worked as a Gracia cook, Covarrubias continued to mistreat the cooks by shouting, yelling and gesturing threateningly at them and threatening to "report" (translated from Spanish) them if they did not work quickly enough to satisfy her.

149. Plaintiff Lara-Martinez feared complaining or quitting because of how the Defendants treated workers, including Gracia supervisor Covarrubias's physical and verbal aggression towards Gracia cooks.

150. Plaintiff Lara-Martinez and the other kitchen workers could not leave the camps or fields on their own. The camps are in remote locations and the workers depended on Gracia drivers and supervisors for all transportation.

151. Plaintiff Lara-Martinez and the other cooks were often hungry because they were not given time to eat.

152. Plaintiff Lara-Martinez believed that if she quit, she would be deported, never be able to find an H-2A job in the future, and her husband would lose his job, his reputation, and future job opportunities.

**FLSA COLLECTIVE ACTION ALLEGATIONS**

153. The named Plaintiffs seek to bring their claims under the FLSA pursuant to the collective action procedures specified in 29 U.S.C. § 216(b) on behalf of themselves individually and all other similarly situated employees of Defendants who, in any pay period falling within the three chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action, were or will work for Defendants as cooks, held H-2A visas, were not reimbursed for all of their H-2A related expenses (recruitment fees, travel, visa, hotel, meals, and/or border crossing costs) during their first workweek, and who timely file (or have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b) ("Reimbursement Collective Action"). They seek unpaid minimum wages and liquidated damages.

154.     Defendants willfully failed to pay Plaintiffs and the putative members of the Reimbursement Collective Action the minimum wages owed to them by failing to reimburse them in the first workweek for expenses which were incurred for the benefit and convenience of the Defendants.

155.     The named Plaintiffs  also seek to bring their claims under the FLSA pursuant to the collective action procedures specified in 29 U.S.C. § 216(b) on behalf of themselves and all other similarly situated employees of Defendants  who, in any pay period falling within the three chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action, were or will work as cooks for Defendants, were paid less than the minimum wage for the hours worked in one or more workweeks, and who timely file (or have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b) ("Minimum Wage Collective Action").  They seek unpaid minimum wages and liquidated damages.

156.     Defendants willfully failed to pay Plaintiff Gonzalez-Rodriguez, Plaintiff Lara-Martinez, and the putative members of the Minimum Wage Collective Action the minimum wages owed to them.

157.     The named Plaintiffs finally seek to bring their claims under the FLSA pursuant to the collective action procedures specified in 29 U.S.C. § 216(b) on behalf of themselves and all other similarly situated employees of Defendants  who,  in any pay period falling within the three chronological years immediately preceding the date on which this action was filed and continuing thereafter through the date on which final judgment is entered in this action, worked for Defendants as cooks, held H-2A visas, were not or will not be paid at the hourly rate required by 29 U.S.C. § 207(a)(1) for the hours they performed or will perform work in excess

of 40 hours in any workweek in which they were not employed in agriculture, and who timely file (or have already filed) a written consent to be a party to this action pursuant to 29 U.S.C. § 216(b) ("Overtime Collective Action"). They seek unpaid overtime wages and liquidated damages.

158. Defendants willfully failed to pay Plaintiff Gonzalez-Rodriguez, Plaintiff Lara-Martinez, and the putative members of the Overtime Collective Action the overtime wages owed to them.

## **FIRST CLAIM FOR RELIEF**

### (FAIR LABOR STANDARDS ACT: MINIMUM WAGE)

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

159. Plaintiffs bring this claim for Defendants' violations of the minimum wage provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq,* on behalf of themselves and all others similarly situated.

160. Plaintiffs have consented in writing to bring this FLSA action and have filed their written consents with this Complaint.

161. Defendants violated the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), by failing to pay Plaintiffs Gonzalez-Rodriguez and Lara-Martinez, and the members of the collective actions described in Paragraphs 153-56 at least the product of the federal minimum wage of $7.25 and the total number of hours of labor performed in each workweek during which they were employed in at least two ways.

162. Defendants willfully failed to fully reimburse Plaintiffs Gonzalez-Rodriguez and Lara-Martinez and members of the Reimbursement Collective Action during their first week of employment for expenses incurred primarily for the benefit of Defendants, including recruitment fees, their in-bound subsistence costs, lodging expenses near the U.S. Consulate,

visa fees and visa-related processing fees, issuance of Form I-94, and the full cost of travel from the place of recruitment to the jobsite, in violation of the FLSA.

163.    When these expenses are calculated as deductions from their first week's pay, as required by law, they cause the first-week wages of Plaintiffs Gonzalez-Rodriguez and Lara-Martinez and the members of the Reimbursement Collective Action to be less than the FLSA minimum wage.

164.    Defendants, also failed to compensate Plaintiffs Gonzalez-Rodriguez, Lara-Martinez, and members of the Minimum Wage Collective Action at the minimum wage rate for all hours worked when Defendants failed to pay Plaintiffs Gonzalez-Rodriguez and Lara-Martinez, and members of the Underpayment Collective Action for each hour worked, in violation of the FLSA.

165.    Defendants knew that they were required to pay Plaintiffs Gonzalez-Rodriguez and Lara-Martinez, and members of the Minimum Wage Collective Action at least the Federal minimum wage for each hour worked during a workweek. As such, Defendants' failure to pay Plaintiffs Gonzalez-Rodriguez and Lara-Martinez, and members of the collective actions the minimum wage was willful within the meaning of 29 U.S.C. § 255.

166.    As a consequence of Defendants' willful violation of their rights under the FLSA, Plaintiffs seek unpaid minimum wages, plus an equal amount in liquidated damages, and costs and attorneys' fees, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and the members of the Reimbursement and Minimum Wage Collective Actions.

## SECOND CLAIM FOR RELIEF

## (FAIR LABOR STANDARDS ACT: OVERTIME)

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

167.    Defendants failed to pay Plaintiffs Gonzalez-Rodriguez and Lara-Martinez and the putative members of the Overtime Collective Action at the overtime rate required by 29 U.S.C. § 207 for each hour of work above forty hours in any workweek in which they worked more than forty hours and performed work where they were not engaged in agriculture, as described in Paragraphs 157-58.

168.    Upon information and belief, Defendants' failure to pay Plaintiffs Gonzalez-Rodriguez and Lara- Martinez and members of the Overtime Collective Action overtime at a rate of one-and-a-half times the promised wages was willful.

169.    As a consequence of Defendants' willful violation of their rights under the FLSA, Plaintiffs Gonzalez-Rodriguez and Lara- Martinez seek unpaid overtime wages, plus an equal amount in liquidated damages, and costs and attorneys' fees, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and the members of the Overtime Collective Action.

## THIRD CLAIM FOR RELIEF

## (NORTH CAROLINA WAGE AND HOUR ACT)

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

170.    Defendants failed to pay Plaintiffs Gonzalez-Rodriguez and Lara-Martinez at least the promised wage for each hour or part of an hour that Plaintiffs worked for Defendants for each workweek, in violation of N.C. Gen. Stat. § 95-25.6.

171.    Defendants failed to reimburse Plaintiff Gonzalez-Rodriguez and Lara-Martinez during their first week of employment for expenses incurred primarily for the benefit of Defendants,

including recruitment fees, inbound subsistence costs, lodging expenses near the U.S. Consulate, visa fees and visa-related processing fees, issuance of Form I-94, and the full cost of travel from the place of recruitment to the jobsite. Defendants' failure to fully reimburse Plaintiffs during the first workweek cause their first week's earnings to be less than the promised wage.

172.    Defendants also failed to compensate Plaintiffs Gonzalez-Rodriguez and Lara-Martinez the promised wage for all hours worked by not paying them for all hours worked.

173.    As a result of these actions, Defendants are in violation of Plaintiff Gonzalez-Rodriguez's and Lara-Martinez's rights under N.C. Gen. Stat. §§ 95-26.6. Plaintiffs have suffered damages in the form of unpaid wages and liquidated damages that may be recovered from Defendants under N.C. Gen. Stat. §§ 95-25.22(a) and 95-25.22(a)(1).

## FOURTH CLAIM FOR RELIEF

### TVPRA - FORCED LABOR

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

174.    Plaintiff Gonzalez-Rodriguez brings this civil claim pursuant to the civil remedy provisions of the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a) against Defendants for violations of 18 U.S.C. § 1589(a).

175.    Defendants and their agents knowingly used force and threats of force against Plaintiff Gonzalez-Rodriguez to obtain her labor and services.

176.    Defendants and their agents knowingly threatened Plaintiff with serious harm, including financial, reputational, and legal harm, to obtain the labor and services of Plaintiff.

177.   Defendants and their agents knowingly obtained Plaintiff's labor through abuse of the legal process by including false information in the Clearance Orders and thereby using the H-2A program in a manner for which the law was not intended.

178.   Defendants knowingly threatened Plaintiff Gonzalez-Rodriguez with the abuse of law or legal process, including threatening her with arrest, deportation, and reporting her to U.S. Federal government officials, to obtain her labor and services.

179.   Defendants implemented a scheme, pattern or plan to cause Plaintiff to believe that she or her family would experience serious harm if she did not continue to work in the Gracia kitchens. This scheme, pattern or plan included, but was not limited to, false promises, withholding documents, debt, limiting access to food, denial of medical care, isolation, monitoring and limiting all Plaintiffs' movements, and physical and verbal abuse of Plaintiffs and their co-workers.

180.   Defendants intended to, and did, benefit from the compelled labor of Plaintiff.

## FIFTH CLAIM FOR RELIEF

### (TVPRA – TRAFFICKING)

Plaintiffs incorporates each of the allegations contained in the preceding paragraphs by reference.

181.   Plaintiff Gonzalez-Rodriguez brings this civil claim pursuant to the civil remedy provisions of the TVPRA against Defendants for violations of 18 U.S.C. § 1590.

182.   Defendants, by and through their agents, knowingly recruited, provided, or obtained Plaintiff's labor by various fraudulent and/or coercive means including:

   a.   Knowingly making false representations on the 2019 Applications and accompanying 2019 Clearance Orders submitted to USDOL for approval;

31

b. Making fraudulent promises to Plaintiff regarding the terms of her living and/or working conditions in the U.S.;

c. Making fraudulent promises to Plaintiff regarding the length of her visa to work with them in the U.S.;

d. Controlling Plaintiff's access to food and medical care; and

e. Threatening Plaintiff verbally and through their threatened or actual acts of harm towards other workers in view of Plaintiffs.

183. While Plaintiff was a victim of trafficking residing in Defendants' labor camp, she was also the victim of aggravated sexual abuse.

184. Defendants intended to benefit from their trafficking scheme.

185. Through these activities, the Defendants knowingly recruited, transported, and harbored Plaintiff to obtain her labor or services by:

a. Means of force, threats of force, physical restraint, or threats of physical restraint to Plaintiff or another person;

b. Means of serious harm or threats of serious harm to Plaintiff or another person;

c. Means of the abuse or threatened abuse of law or legal process; and

d. Means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

186. For these violations, Plaintiff has suffered injury and is entitled to recover damages, including punitive damages, and attorneys' fees pursuant to 18 U.S.C. § 1595(a).

## SIXTH CLAIM FOR RELIEF

### (TVPRA: UNLAWFUL CONDUCT IN RESPECT TO DOCUMENTS IN FUTHERANCE OF TRAFFICKING)

32

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

187.    Plaintiff Gonzalez-Rodriguez brings this civil claim pursuant to the civil remedy provisions of the TVPRA against Defendants for violations of 18 U.S.C. § 1592.

188.    Defendants knowingly removed and possessed Plaintiff's I-94 immigration forms, passports containing her H-2A visa, and Mexican voting credential documents.

189.    Plaintiff suffered injury as a result of this violation and is entitled to recover damages, including punitive damages, and attorneys' fees pursuant to 18 U.S.C. § 1595(a).

## SEVENTH CLAIM FOR RELIEF

### (TVPRA: UNLAWFUL CONDUCT WITH RESPECT TO IMMIGRATION DOCUMENTS)

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

190.    Plaintiffs bring this civil claim pursuant to the civil remedy provisions of the TVPRA against Defendants for violations of 18 U.S.C. § 1597.

191.    Defendants knowingly and with intent to defraud hired Plaintiffs to work in North Carolina on H-2A visas by making materially false promises or representations about the H-2A job openings.

192.    In the course of hiring Plaintiffs to perform work in North Carolina on H-2A visas based on false promises or representations, Defendants knowingly confiscated Plaintiffs' I-94 immigration forms and passports.

193.    For these violations, Plaintiffs have suffered injury and are entitled to recover damages, including punitive damages and attorneys' fees, pursuant to 18 U.S.C. § 1595(a).

## EIGHTH CLAIM FOR RELIEF

### (NORTH CAROLINA HUMAN TRAFFICKING LAW)

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

33

194. Plaintiff Gonzalez-Rodriguez brings this civil claim pursuant to the civil remedy provisions of the North Carolina Human Trafficking Act, N.C. Gen. Stat. § 14-43.18.

195. Defendants, by and through their agents, knowingly recruited, provided, or obtained the labor of Plaintiff by means of deception, coercion, or intimidations, including:

    a. Knowingly making false representations on the 2019 Applications and accompanying 2019 Clearance Orders submitted to USDOL for approval;

    b. Making fraudulent promises to Plaintiff regarding the terms of her living and/or working conditions with them in the U.S.;

    c. Making fraudulent promises to Plaintiff regarding the length of her visa to work with them in the U.S.;

    d. Controlling Plaintiff's access to food and medical care;

    e. Causing Plaintiff to believe she could be arrested for quitting her employment with Defendant Gracia Harvesting;

    f. Threatening to report Plaintiff to federal immigration control officers or other similar law enforcement;

    g. Causing Plaintiff to fear physical and financial harm for her family; and

    h. Threatening Plaintiff indirectly through their acts of harm towards her and towards other workers in view of Plaintiff.

196. For these violations, Plaintiff has suffered injury and is entitled to recover damages, including punitive damages, and attorneys' fees, pursuant to N.C. Gen. Stat. § 14-43.18.

## **CLAIM FOR DECLARATORY RELIEF**

Plaintiffs incorporate each of the allegations contained in the preceding paragraphs by reference.

197.    The named Plaintiffs and putative members of the FLSA collective actions that Plaintiffs seek to represent are in dispute as to their respective rights, privileges, obligations, and liabilities under the NCWHA and the FLSA, and require declaratory relief as to what those respective rights, privileges, obligations, and liabilities are.

## JURY DEMAND

198.    Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Honorable Court enter an order:

1. Finding that this Court has jurisdiction over Plaintiffs' claims;

2. Declaring that Defendant Gracia & Sons has successor liability for the debts of Defendant Gracia Harvesting;

3. Granting a jury trial on all issues so triable;

4. Declaring that Defendants, by the acts and omissions describe above, willfully violated Plaintiffs' rights under the minimum wage and overtime provisions of the FLSA at 29 U.S.C. §§ 206(a) and 207 as set forth in Plaintiffs' First and Second Claims for Relief.

5. Granting judgment in favor of Plaintiffs on their FLSA claims and awarding Plaintiffs monetary damages for unpaid minimum wages and unpaid overtime, plus liquidated damages in an equal amount and interest, costs, and attorneys' fees, as provided by 29 U.S.C. § 216(b);

6. Declaring that Defendants, by the acts and omission described above, violated Plaintiffs' rights under the provision of the North Carolina Wage and Hour Act, as set forth in Plaintiffs' Third Claim for Relief.

7. Granting judgment in favor of Plaintiffs on their NCWHA claims and awarding Plaintiffs monetary damages for unpaid minimum wages and unpaid overtime, plus liquidated damages in an equal amount and interest, court costs, and attorneys' fees, as provided by N.C. Gen. Stat. § 95-25.6.

8. Declaring that Defendants, by the acts and omissions described above, violated Plaintiff Gonzalez-Rodriguez's rights under the TVPRA at 18 U.S.C. §§ 1589, 1590, and 1592 as set forth in Plaintiffs' Fourth, Fifth, and Sixth Claims for Relief.

9. Declaring that Defendants, by the acts and omissions described above, violated Plaintiffs' rights under the TVPRA at 18 U.S.C. § 1597 as set forth in Plaintiffs' Seventh Claim for Relief.

10. Granting judgment in favor of Plaintiffs, for each of their TVPRA claims, and awarding the amount of their damages, including punitive damages, and attorneys' fees;

11. Granting judgment in favor of Plaintiff Gonzalez-Rodriguez, for her North Carolina Human Trafficking claims, as set forth in Plaintiffs' Eighth Claim for Relief, and awarding the amount of her damages, including punitive damages, and attorney's fees;

12. Awarding Plaintiffs pre- and post-judgment interest, as allowed by law;

13. Awarding Plaintiffs their costs; and

14. Granting such injunctive, declaratory, and further relief as this Court deems just and appropriate.

Respectfully submitted,

North Carolina Justice Center
P.O. Box 28068
Raleigh, NC 27611
Telephone: 919-856-2154
Facsimile: 919-856-2175

/s/ Clermont Ripley
Clermont Ripley
N.C. State Bar No. 36761
clermont@ncjustice.org

/s/ Carol L. Brooke
Carol L. Brooke
N.C. State Bar No. 29126
carol@ncjustice.org

Legal Aid of North Carolina, Farmworker Unit
P.O. Box 26626
Raleigh, NC  27611
Telephone: 919-856-2180
Facsimile: 919-856-2187

/s/ Caitlin A. Ryland
Caitlin A. Ryland
N.C. State Bar No. 38472
CaitlinR@legalaidnc.org

/s/ Aaron V. Jacobson
Aaron V. Jacobson
N.C. State Bar No. 44065
AaronJ@legalaidnc.org

<u>CERTIFICATE OF SERVICE</u>

This is to certify that the undersigned has this date filed the foregoing document with the Court' CM/ECF system which will send notification to the following person(s) and/or entities listed below by e-mail:

F. Marshall Wall
mwall@cshlaw.com
Cranfill Sumner & Hartzog LLP
P.O. Box 27808
Raleigh, North Carolina 27611-7808
*Attorney for Defendants Gracia and José M. Gracia Harvesting, Inc.*

This the 8th day of April, 2022.

<u>/s/ Clermont F. Ripley</u>
Clermont R. Ripley